## JOHN STREETER *v.* HIRAM RUSH.

LIQUIDATED DAMAGES—PENALTY.—Streeter sold to Rush his butcher shop, tools, etc., at Suisun, and in his contract of sale, entered into this covenant with Rush: "I also bind myself in the sum of five hundred dollars to said Rush, not to go into the butchering business in said Suisun, without the consent of said Rush, in any manner whatever." *Held*, that the five hundred dollars mentioned in the covenant, are to be regarded as liquidated damages, and not as penalty.

ID.—The question whether a specified sum mentioned in a contract, to be paid by either party in the event of its violation, is liquidated damages, or a penalty, must be determined by the intention of the parties, to be ascertained from a consideration of the whole contract.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The following is the contract of sale executed by Streeter to Rush:

"Know all men by these presents, that I, John Streeter, of the Town of Suisun, in the County of Solano, and State of California, of the first part, for and in consideration of the sum of eight hundred dollars, lawful money of the United States, to me paid by Hiram Rush, of the same town and State, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant

and convey unto the said party of the second part, his executors, administrators, and assigns, the following property, to wit: (Here follows a description of the property.) And I do for myself, my heirs, executors, and assigns, covenant and agree to and with said party of the second part, his executors and assigns, to warrant and defend the sale of said property, goods, and chattels, hereby made unto the said party of the second part, his executors, and assigns, against all and every person and persons whatsoever.

" I also bind myself in the sum of five hundred dollars to said Rush, not to go into the butchering business in said Suisun, without the consent of said Rush, in any manner whatever.

" Witness my hand and seal, the 29th day of August, 1862.
"JOHN STREETER."   [SEAL.]

The defendant asked the Court to give the jury the following instruction, which was refused, and defendant excepted.

" The instrument in evidence is an agreement of Streeter to pay Rush five hundred dollars, if he (Streeter) should engage in the butchering business in any manner in Suisun; and if the jury believe from the evidence that he has so engaged in the butchering business, they must allow the defendant the full amount of his five hundred dollars damages."

The jury found a verdict in favor of plaintiff for the amount due on the notes, without making any deduction for the five hundred dollars.

Defendant appealed.

The other facts are stated in the opinion of the Court.

*M. A. Wheaton*, for Appellant.

When from the nature of a contract it is not practicable to ascertain the amount of damages sustained by a violation of it, the sum named by the parties as such damages will be held to be liquidated damages. (*Williams* v. *Dakin*, 22 Wend. 201; *Holmes* v. *Holmes*, 12 Barb. 147; *California Navigation*

*Co.* v. *Wright,* 6 Cal. 258.   See, also, *Coffee* v. *Meiggs,* 9 Cal. 363 ; *Baldwin* v. *Bennett,* 4 Cal. 392.)

The sum in which a person binds himself not to engage in any particular business in a particular place, is liquidated damages.   (*Green* v. *Price,* 13 M. & W. 695; *Smith* v. *Smith,* 4 Wend. 468.)

*Whitman & Wells,* for Respondent.

The contract on which the counter claim is based is, in partial restraint of trade, not void on that account, but good or bad as founded on an adequate consideration, and as reasonable in itself.   They are supported by the modern authorities, and we do not question their validity ; but we do urge that the very circumstance is a ground for a lenient construction of its provisions, that the party having bound himself (for *bond* is the word used, and that word imports a penalty) not to engage in the business in Suisun as against Rush, simply imports that he will not do so in such a way as to damage Rush.   The contract, it seems, is personal only, and if Rush should retire from the business, or cease to have any determinate interest in enforcing the contract, it might well be questioned whether he could enforce a claim for other than nominal damages.   So, too, if Rush should, in the course of his business, hire the plaintiff as a butcher, could he enforce the penalty against him?   Or if· Rush should sell out his butchering business, and retain this contract, it would be a harsh construction that would expose the party to the penalty. We say harsh, because the presumption would be that the contract was only made to protect Rush while in the business, and that not against the plaintiff, as a person following·the same trade merely, but added to that, one who just retiring from business, could, by resuming it, prevent the plaintiff from obtaining the custom relinquished by defendant.   A reasonable view of the contract, its character; and object, we submit, would hold to a personal contract for the benefit or protection of Rush.

The question of liquidated damages is admitted to be one of construction, and for that purpose we urge the subject of the contract, the situation of the parties, the usages of trade, to which they are supposed to refer, and the circumstances of their conduct: all necessary and proper elements in deciding the question.

The case is not one where there is any real difficulty in assessing damages; proof of the business, its diminution, and the extent of that diminution, can be readily made. Few cases of damage are presented capable of easier proof than the one at bar. The case, then, comes within the fifth rule laid down by Mr. Greenleaf, (2 Greenleaf on Evidence, section 213,) and is not within any rule laid down by that author that would make this a matter of liquidated damages.

By the Court, RHODES, J.

The plaintiff sold to the defendant his butcher shop, the fixtures and tools, and certain personal property connected with the business, receiving therefor two promissory notes of the defendant; and in his contract of sale he entered into this covenant with the defendant: "I also bind myself in the sum of five hundred dollars to said Rush not to go into the butchering business in said Suisun, without the consent of said Rush, in any manner whatever." The plaintiff now sues on the notes, and the defendant offers to set off the sum of five hundred dollars due him by reason of the plaintiff having engaged in the butchering business contrary to his covenant.

The only question in the case arises upon the refusal of the Court to give the third instruction asked for by the defendant. The question is this: Is the sum of money expressed in the covenant to be considered as a penalty, or is it to be held as liquidated damages?

This subject has been a fruitful source of discussion in numerous cases, and it is impossible to reconcile all of them; but while there has been a conflict among them on some points, there are certain rules in which they all agree. The intention

of the parties to the agreement is the point of inquiry, and is
to be ascertained from a consideration of the whole instru-
ment; and when ascertained, it is to be adopted by the Court,
and full effect given to it, unless it is contrary to law. In con-
struing the instrument, resort must be had to the signification
of the terms employed by the parties, and to the rules of law,
in view of which the parties are presumed to have contracted.
If the parties agree upon the payment of a certain sum,
whether in terms as a penal sum or not, if it can be plainly
understood that the gross sum was intended as a security for
the payment of a less sum, it will be held as a penalty; and
it is also a general rule, that if the parties agree that the sum
shall be paid as liquidated damages, the Court will so regard
it, unless it clearly appears that it was intended merely as a
security for the payment of damages that might be considered
liquidated and certain in amount.

Where the contract contains both the terms, "penalty," and
" liquidated damages," as applied to the gross sum to be paid,
or equivalent terms, or where it contains neither of those
terms, the Court will ascertain the intention of the parties
from the whole instrument, as it would in case of any other
agreement. (Sedgwick on Measure of Damages, 417 to 442.)
If the damages for the performance or non-performance of the
act stipulated to be done or not to be done by the party agree-
ing to pay the gross sum, can be ascertained with certainty, or
have been agreed upon between the parties, then, as in the
case where the parties have denominated it a penalty, the
Court will consider it as a security; but if they are " wholly
uncertain, and incapable of estimation, otherwise than by mere
conjecture," as was said in *Williams* v. *Dakin*, 22 Wend. 201,
the gross sum will be regarded as liquidated damages. This is
a rule by which to ascertain the intention of parties in cases
of doubt, and not to enlarge or limit the intention, when ex-
pressed or clearly ascertainable without its aid. Courts are
not authorized to put a different construction upon a contract
from what the parties intended it should bear; nor are they
warranted in adding to it a further term, or in striking there-

from a term the parties have employed; nor are they justified in attempting to modify or reform a contract under the vague notion of relieving a party from the hardships of an agreement into which he has willingly and knowingly entered. Parties are more competent to make their own bargains than Courts are to make bargains for them.

In this case the plaintiff evidently intended to sell, and the defendant to purchase, the good will of the plaintiff's business; and the plaintiff agreed that if he entered into the business at the same place, without the defendant's consent, he would pay the defendant five hundred dollars. The agreement was not that the plaintiff would pay the damages that the defendant should actually sustain, for they knew that damages for such a breach of contract were uncertain and matter of mere conjecture, and they therefore preferred to establish their own measure of damages; and for that purpose they fixed upon the sum of five hundred dollars, to be paid by the plaintiff to the defendant, if the plaintiff should engage in the butchering business at Suisun without the defendant's consent. That sum is, by agreement of the parties, liquidated damages.

The Court has no greater power to relieve the plaintiff from the payment of that sum because it may exceed the damages actually sustained, than it has to discharge the defendant from the payment of the two notes in suit for the reason that they may exceed the value of the property sold to him. It only remains to add, that the Court erred in refusing to give the third instruction asked by the defendant.

Judgment reversed and the cause remanded for a new trial.

SAWYER, J., dissenting.

I regret that I am unable to agree with my associates in their construction of the covenant in question in this suit. It is in the following words: "I also bind myself in the sum of five hundred dollars to said Rush not to go into the butchering

business in said Suisun, without the consent of said Rush, in any manner whatever."

This, in my opinion, is in the nature of a penalty, and not a covenant for liquidated damages. The principles of construction announced in the prevailing opinion, generally meet my approbation. But on one point I think a qualification is required, and *that* is the point upon which the construction of this covenant turns. Quoting from the decision in *Williams* v. *Dakin*, 22 Wend., a leading case in the United States on the subject, the opinion says : " But if they (the damages) are wholly uncertain, and incapable of estimation, otherwise than by mere conjecture," the gross sum will "be regarded as liquidated damages." This would, doubtless, be strictly true as applied to the covenant under consideration in that case, and uncertainty in the amount of damages is one element to be considered in the construction of such covenants when the language is doubtful. But it is not of itself a controlling test.

In the case referred to, the contract was for the sale of a newspaper establishment, and the good will and patronage of the paper; five hundred dollars was paid for the type and material, and three thousand dollars for the patronage and good will of the business. There was a covenant not to print or publish in Utica, or suffer to be printed or published in any building owned by the grantor in Utica, for a specified time, any other paper of the character designated. For the faithful performance of their covenants the parties bound themselves in the sum of three thousand dollars. " Then followed a stipulation that the said sum of three thousand dollars should be and was thereby *fixed and settled as liquidated damages, and not as a penal sum* for any violation of the covenant," etc. Here there would seem to be little need of calling in the aid of rules of construction to ascertain what the parties intended by their covenant. Yet it is in construing the foregoing covenant that the Court used the language quoted by Mr. Justice Rhodes. The Court also laid some stress upon the fact that the parties had fixed upon the precise sum (three thousand dollars) as the liquidated damages which was paid

for the "patronage and good will" of the paper; and in that case, although the Judges and a majority of the Senators held in accordance with the covenant, that the sum should be regarded as "*liquidated damages,*" and "*not a penal sum,*" five Senators voted the other way.

But in the case now under consideration the covenant contains no such express and decided declaration of the intention of the parties to make the sum "*liquidated damages, and not a penal sum,*" as is found in *Williams* v. *Dakin.* The language quoted from the opinion in that case, I think, to render it applicable generally, requires qualification; and the required qualification is found well expressed by Mr. Sedgwick, in his work on the Measure of Damages, last ed. p. 442. After a full discussion of the numerous cases on the subject, he lays down five propositions, deducible from those cases which he thinks are to govern whenever a question arises as to whether a sum named in the covenants is to be regarded as a penal sum, or as liquidated damages. The fifth proposition is as follows: "That when, independently of the stipulation, the damages would be wholly uncertain, and incapable or very difficult of being ascertained, except by mere conjecture, then the damages will be usually considered liquidated, *if they are so denominated in the instrument.*"

The qualification at the close of the proposition is an important one; and the covenant in *Williams* v. *Dakin* contained the qualifying terms, while that in the case under consideration does not. The amount is not denominated liquidated damages in the covenant in this case. There is no direct express covenant to pay that particular sum of money. It is undoubtedly a proper case for the parties to stipulate for liquidated damages, but the question is, Have they done so? I think not. They certainly have not done so in express terms, nor by an express covenant to pay that particular sum. The defendant bound himself " in the sum of five hundred dollars" not to do a particular act, but did not agree to pay that particular sum upon a breach of the covenant, whether

Streeter *v.* Rush.

the actual damages sustained should amount to that sum or not.

I have examined a large number of cases, and have not found one where the sum stated has been held as liquidated damages, unless it was expressly stated to be liquidated, or there was an express covenant to pay a specific sum of money on the doing or not doing of the things provided for. On the contrary, I find many cases where a sum expressly stipulated to be liquidated damages has been held to be penal only, notwithstanding an express stipulation to the contrary; and generally, the fact that the damages are uncertain has been brought in to aid a stipulation for liquidated damages, or an express covenant to pay a specific sum on the delinquency of the party against the ordinary presumption that such sums are penal merely, and in some cases where it would seem that no such aid should be required.

It is also a rule that, "When it is doubtful on the face of the instrument whether the sum mentioned was intended to be stipulated damages, or a penalty to cover actual damages, the Courts hold it to be the latter." (Sedgwick on Dam., same ed. 440, note 1, p. 441, note 1; *Bagley* v. *Peddie*, 5 Sandf. 192.)

In the case under consideration, the most favorable construction for the appellant that can be put upon the covenant is, that there is a reasonable doubt as to the intent of the parties. Such being the case, under the last rule stated it should be construed as a penalty. But to my mind the language is not doubtful. The form of the covenant is much more analagous to the form used in cases of penalty than in cases of liquidated damages. There is no covenant to pay the specific sum of five hundred dollars whether the actual damages amount to that sum or not, and there is no express statement that the same is to be liquidated damages.

I am of the opinion, under the rules of construction established by the numerous cases upon this subject, that the covenant under consideration should be regarded as stipulating for a penal sum, and not for liquidated damages.