[Civ. No. 18915.   First Dist., Div. Two.   Oct. 17, 1960.]

FLORA SMITH, Respondent, v. ROYAL MANUFACTUR-
ING COMPANY (a Fictitious Name) et al., Appellants.

318

Rhein & Dienstag, Edward Dienstag and Kirk L. Kirk for Appellants.

Knight, Boland & Riordan and Richard J. Kilmartin for Respondent.

McGOLDRICK, J. pro tem.*—This is an appeal by defendants, as garnishees, from a judgment holding that a liquidated damages provision in a contract between Royal Manufacturing Company, defendant and appellant herein, and one A. R. Montgomery, the judgment debtor of plaintiff and respondent herein, was void, and that money retained under said liquidated damages provision was a debt owing to A. R. Montgomery.

On April 23, 1953, A. R. Montgomery entered into a contract with appellants for the purchase of 100 coffee vending machines at a price of $300 per machine. The contract was for a period of one year unless terminated by fulfillment of its terms. It provided that appellants would not sell the coffee machines to anyone but A. R. Montgomery and in no manner distribute said machines in competition to A. R. Montgomery. Under the terms of the contract, A. R. Montgomery deposited $5,100 pursuant to a clause in the contract which provided that in the event Montgomery failed or refused to fulfill the terms of the agreement he was to forfeit to appellants as liquidated damages said sum on deposit. It further provided that if appellants failed or refused to fulfill the terms of the agreement, said sum was to be refunded to Montgomery. Thereafter, Montgomery received 24 coffee machines and paid for them which gave him a credit balance of $6,350 with appellants made up by the original deposit of $5,100 and an advance payment of deposits of $1,250. In January, 1954, appellants began selling the same type of coffee machine to the Leeder Specialty Company.

In 1953 respondent entered into a contract with one A. R. Montgomery (not a party to the instant action) for the purchase of several coffee vending machines, paying him $5,145 on account. No coffee machines were delivered to respondent by Montgomery and on May 6, 1954, respondent recovered a judgment against him for $5,428.08.

---

*Assigned by Chairman of Judicial Council.

In May, 1954, respondent served upon appellants, as garnishees, a writ of execution issued on respondent's judgment against A. R. Montgomery. Appellants, in their answer, denied the indebtedness to Montgomery, claiming the deposit made by him for their own use and benefit. The sole defense relied upon in their answer and amended answer was that the deposit had passed to them under the liquidated damages provision of the contract.

Louis Wolcher gave conflicting statements as to why the sum of $5,100 was settled upon as liquidated damages; *i.e.*, he stated it was difficult to ascertain or estimate damages because the machinery was just being developed. He also stated that this was all he could get out of Montgomery. There was no evidence introduced at the trial to show that Montgomery had breached the contract. It appears that shortly after or about the time of the transaction, Montgomery went to jail. However, there is nothing in the record to indicate that he ceased to fulfill his obligations under the contract or that his incarceration was before appellant commenced to sell the machines to Leeder Specialty Company.

The questions involved on the appeal are as follows: (1) Was there substantial evidence to support the finding that defendant Louis Wolcher was an individual doing business under the fictitious name of Royal Manufacturing Company? (2) Was there substantial evidence to support the finding that defendant Louis Wolcher entered into the written agreement with A. R. Montgomery? (3) Does the fact that appellant proposed these findings bar him from challenging them under the doctrine of invited error? (4) Was there substantial evidence to support the finding that appellant and not Montgomery breached the contract? (5) Did the trial court abuse its discretion in refusing to reopen the trial to take testimony of Montgomery, one of the parties to the contract? (6) Was there an existing right due Montgomery from appellant which could be subjected to garnishment at the time the writ issued? (7) Was the provision in the contract for liquidated damages valid or void as a penal forfeiture? (8) Was it error for the trial court to exclude evidence of actual damages where appellant had not pleaded them but merely raised the question of his entitlement to keep a deposit as liquidated damages in his answer?

Appellant Wolcher contends that the trial court erred in its finding of fact that he was an individual doing business under the fictitious name of Royal Manufacturing Company.

He urges that he could only be held individually under the "*alter ego*" theory. ■ In order to invoke the doctrine of "*alter ego*," there must be a unity of interest and ownership of such a nature that separate individual and corporate personalities do not exist and that if the acts are treated as those of the corporation alone, an inequitable result will follow. (*Automotriz, etc. De California* v. *Resnick,* 47 Cal.2d 792 [306 P.2d 1, 63 A.L.R.2d 1042].) Moreover, the "*alter ego*" argument can only apply if the corporation's existence was established by the evidence.

■ The only testimony given on this subject was by appellant on his examination under section 2055, Code of Civil Procedure; viz., he refers to the Royal Manufacturing Company as a name he used in business, a company and a corporation. ■ It is axiomatic that where a conflict in the evidence exists the appellate court is bound by the trial court's finding if based upon substantial evidence. (*Isenberg* v. *Sherman,* 212 Cal. 454 [298 P. 1004, 299 P. 528].)

■ There is evidentiary support for the trial court's finding that Louis Wolcher was doing business under the fictitious name of Royal Manufacturing Company or Royal Machine Manufacturing Company.

■ Appellant proposed this finding of fact and even though it would be without evidentiary support or that the evidence supported appellant's "*alter ego*" theory, the doctrine of invited error would apply. ■ The parties must abide by the consequences of their own acts and cannot seek reversal of their own errors which they committed or invited. (4 Cal.Jur.2d § 556, p. 420; *Shapiro* v. *Equitable Life Assur. Soc.,* 76 Cal.App.2d 75 [172 P.2d 725].) This principle applies also to proposed findings as well as instructions. (*Tucker* v. *Cave Springs Min. Corp.,* 139 Cal.App. 213 [33 P.2d 871]; *Johnson* v. *Rich,* 150 Cal.App.2d 740 [310 P.2d 980].)

■ This court is not impressed by appellant's final argument in support of the proposition that the doctrine of invited error will not be strictly applied, where to do so penalizes a party unjustly. It is urged that this proposed finding was prepared in haste by appellant's present attorneys who were substituted following the death of his original attorney. We are unable to conclude that the appellant has established a sufficient showing that he is being unjustly penalized and he, therefore, should be responsible for his own invited errors.

■ Appellant also contends that there is a lack of evidence to support the court's finding of fact number four

that he, Wolcher, entered into the written Royal-Montgomery contract. The contract in question was signed:

"ROYAL MANUFACTURING COMPANY

"By /s/ Louis Wolcher

Second Party"

Appellant urges that the form of this instrument shows an intent to bind the principal, and where such intent can be ascertained from the instrument, the agent is not bound. (2 Cal.Jur.2d § 141, p. 830; *Haskell* v. *Cornish,* 13 Cal. 45; *Hobson* v. *Hassett,* 76 Cal. 203 [18 P. 320, 9 Am.St.Rep. 193]; *Kerry* v. *Pacific Marine Co.,* 121 Cal. 564 [54 P. 89, 66 Am.St.Rep. 65].) In cases of contracts signed in the precise manner of this one; viz., where the name of principal and agent are set out, with the preposition "by" in between, the Restatement of the Law, Agency, section 156, states it raises an inference that the principal and not the agent is bound. This contention, however, is unavailing in the instant case since the court found that the appellant was an individual doing business under a fictitious name. Therefore, the manner in which he signed the contract cannot relieve him of personal liability.

The appellant also proposed this finding and for the same reasons herein pointed out is estopped from challenging it under the doctrine of invited error, assuming, of course, that it had no evidentiary support.

One of the main questions on appeal is which party breached the contract. The trial court found that appellant Wolcher did so when he commenced to sell machines which were the subject of the contract to the Leeder Specialty Company during the time the contract was in force and effect. Appellant contends that Montgomery defaulted, which would free it from obligations of the contract. (*Wilson* v. *Corrugated Kraft Containers, Inc.,* 117 Cal.App.2d 691 [256 P.2d 1012].) Therefore, its subsequent sale to Leeder Specialty Company would not be a breach. [ However, the appellate court must view the evidence in a light most favorable to the trial court's finding and will indulge all intendments and reasonable inferences which favor sustaining the trier of fact. (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]; *Estate of Isenberg,* 63 Cal.App.2d 214 [146 P.2d 424].)

There is no evidence to support appellant's contention that A. R. Montgomery breached the contract. The contract provided that appellant would not sell the machines to any-

one but Montgomery. Appellant sold the machines to Leeder Specialty Company during the time that the contract was in force and effect and this breached the contract. Montgomery was thereafter excused from further performance and obligations thereunder. (12 Cal.Jur.2d, § 226, p. 449]; *Twomey* v. *People's Ice Co.*, 66 Cal. 233 [5 P. 158]; *Wilson* v. *Corrugated Kraft Containers, Inc., supra; Gold Min. & Water Co.* v. *Swinerton*, 23 Cal.2d 19 [142 P.2d 22].)

Appellant also urges that the trial court abused its discretion in refusing to reopen the trial to take Montgomery's testimony. In this connection, the affidavit indicates that the appellant did not breach the contract. The question, therefore, is whether the trial court abused its discretion in refusing to reopen the trial. It is an established rule of law that a court's ruling on the question of reopening the case will not be disturbed by an appellate court in the absence of clear showing of abuse of discretion. (4 Cal.Jur.2d, Appeal and Error, § 597, p. 474; *Lee* v. *Dawson*, 44 Cal.App.2d 362 [112 P.2d 683]; *Chung* v. *Johnston*, 128 Cal.App.2d 157 [274 P.2d 922].) The appellant urges that the former was a strong case for supporting the exercise of discretion since the attempt to reopen the case was characterized as a "fishing expedition," and that the latter case indicated no showing as to why the witness was not available, whereas appellant in his affidavit states that Montgomery was out of California at the time. Montgomery was probably in jail at the time; he had formerly been convicted of six felonies. These are all strong factors favoring the court's exercise of discretion where at best the testimony would be of questionable credulity. Since the power to reopen the case rests in the sound discretion of the trial court (*Mazzenga* v. *Rosso*, 87 Cal.App.2d 790 [197 P.2d 770]), and since no strong showing was made showing an abuse of discretion, no error was committed by the trial court in refusing to reopen the case for the purpose of permitting appellant to present Montgomery's testimony.

Appellant also contends that a creditor takes only such rights and interest in a garnished fund as his debtor had at the time of attachment. This proposition, however, ignores the finding of the court that it was appellant and not Montgomery who breached the contract. The cases cited by appellant in support of this argument all relate to contingent funds; *i.e.*, contingent in the sense that a debt may never be due and payable. Moreover, if a liquidated damages provision is invalid as a penalty and the depositor has not

breached the contract, the depositor may maintain an action for the return of the deposit. (*Leslie* v. *Brown Brothers Inc.,* 208 Cal. 606 [283 P. 936].) It, therefore, follows that if the liquidated damages provision in the contract is invalid, Montgomery has a right of action against appellant for the money claimed, and the respondent as his judgment creditor could claim the same through garnishment. (*Walker* v. *Doak,* 210 Cal. 30 [290 P. 290]; *Law Credit Co.* v. *Merchants Nat. T. & S. Bank,* 7 Cal.App.2d 717 [46 P.2d 975].)

Appellant also contends that the trial court erred in determining that the provision of the contract permitting retention of the deposit if Montgomery failed to perform was an invalid liquidated damages provision and a penal forfeiture. The validity of liquidated damages provisions is covered by statute:

Civil Code, section 1670: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Civil Code, section 1671: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

The contract in question discloses that Montgomery did forfeit the deposit as liquidated damages in the event of a breach on his part. However, the terms of a contract are not imperative in determining the nature of a damages clause. (*Associated Press* v. *Emmett,* 45 F.Supp. 907; *Electrical Products Corp.* v. *Williams,* 117 Cal.App.2d Supp. 813 [256 P.2d 403].) It is a correct rule of law as pointed out by appellant that in determining the practicability and difficulty of fixing liquidated damages the court should try to put itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably feasible. (*Better Foods Mkts.* v. *American Dist. Teleg. Co.,* 40 Cal.2d 179 [253 P.2d 10, 42 A.L.R.2d 580].) The fact that at some time after the contract was made damages become readily ascertainable does not affect the validity of a liquidated damages provision. (*Hanlon Drydock etc. Co.* v. *G. W. McNear, Inc.,* 70 Cal.App. 204 [232 P. 1002].) The validity of a liquidated damages provision in a contract is

determined from the intention of the parties as ascertained from consideration of the whole contract. (*Streeter* v. *Rush*, 25 Cal. 67; *Nakagawa* v. *Okamoto*, 164 Cal. 718 [130 P. 707].)

The question of whether or not such difficulty or impracticability exists in each instance is a question of fact. (*Rice* v. *Schmid*, 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589]; *Pacific Factor Co.* v. *Adler*, 90 Cal. 110 [27 P. 36, 25 Am.St.Rep. 102].) Appellant Wolcher testified that the parties fixed the sum deposited as liquidated damages because he felt it was difficult to estimate what the damages might be, and also testified that he fixed this sum as liquidated damages because it was all he could get from Montgomery. Here, the damages were the same whether the breach occurred after one or 99 machines were taken by Montgomery.

Where a fixed sum is agreed upon as liquidated damages for one of several breaches of varying degree, it is to be inferred that a penalty was intended. (*Webster* v. *Garrette*, 10 Cal.App.2d 610 [52 P.2d 550].)

[ ] A liquidated damages clause must represent a reasonable endeavor by the parties to estimate a fair compensation for loss and to ascertain what the damages would be in the event of a breach. (*Rice* v. *Schmid, supra.*) Since there is substantial evidence sustaining the trier of fact, the appellate court will not upset the trial court's finding. (*McCarthy* v. *Tally*, 46 Cal.2d 577 [297 P.2d 981].)

The appellant further contends that the court committed prejudicial error when it refused to allow him to introduce evidence as to his actual damages. He relies mainly upon the case of *Ramsay* v. *Rodgers*, 60 Cal.App. 781 [214 P. 261], for his theory that he did not have to plead actual damages. The respondent also relies upon this case as supporting her contention that it is necessary to plead actual damages. This case involved an employee suit for breach of an employment contract. The plaintiff sought to recover $12,750 which was the aggregate of several sums with interest from the date of his discharge. This was the amount he was entitled to if the liquidated damages provision was void. The jury evidently determined that such discharge was without cause and having so determined, it fixed the plaintiff's damage at the sum of $10,000. By doing so, it gave the plaintiff an amount in damages, not only much less than the amount of his stipulated damage for such discharge under the terms of the contract, but also an amount much less than the sum he would have been entitled to receive as his compensation under said contract had its terms of service and employment

been fulfilled. This is not true in the instant case since the appellant in his answer merely set up a claim based upon a forfeiture of the deposit as liquidated damages. There is no allegation in the answer of actual damages. Moreover, the appellant did not offer or attempt to offer to amend his answer at the trial when the question arose as to the propriety of proof of actual damages. ▮ The elements of an action for breach of contract which must be pleaded are (1) the contract; (2) performance or excuse for nonperformance; (3) breach; (4) damage. (2 Witkin, California Procedure, § 251, p. 1226.)

▮ While no cases were cited by either side on this issue the converse of this situation was resolved in an action for actual damages where liquidated damages were improperly pleaded. The court held that liquidated damages were not in issue and it was error to admit evidence as to such damages. (*Long Beach etc. Dist.* v. *Dodge,* 135 Cal. 401 [47 P. 499].)

Respondent points out that appellants' offer to prove actual damages stated to have been suffered by them as an alternative to liquidated damages is in reality nothing more than an attempt to prove a setoff (counterclaim). A counterclaim does not attack the plaintiff's claim but asserts an independent cause of action by the defendant to defeat plaintiff's ultimate recovery by an offset or to obtain an affirmative judgment for the excess. (*Moskovitz* v. *LeFrancois,* 121 Cal.App. 310 [8 P.2d 1049]; 2 Witkin, California Procedure, § 566, p. 1570.) Moreover, counterclaim, though part of the answer, must be separately pleaded (Witkin, California Procedure, *supra*), and must set forth with the same completeness and sufficiency of allegations as a complaint for such cause of action. (Witkin, California Procedure, *supra.*) A counterclaim was available to the appellant on the garnishment and because his action was one in the nature of a counterclaim, he must be governed by the rules of pleading. However, since we feel the trial court was correct in its determination that appellant and not Montgomery breached the contract, appellant was not entitled to any damages under any theory.

The judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied November 16, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 14, 1960.