114 F.3d 1196
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TRUST COMPANY FOR USL, INC., Plaintiff-Counterclaim Defendant-Appellee,
v.
WIEN AIR ALASKA, INC., Defendant-Counterclaimant-Appellant.
 No. 95-15222.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 12, 1997.*
Decided May 20, 1997.
 
 Before: CHOY, BRUNETTI, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant-counterclaimant-appellant Wien Air Alaska, Inc. ("Wien") appeals the grant of summary judgment in favor of plaintiff-counterclaim defendant-appellee Trust Company for USL, Inc. ("USL"). Wien claims that the district court erred in holding that USL justifiably terminated the contract for the sale of an aircraft to Wien. Wien also contends that the district court erred in holding that USL was entitled to liquidated damages and attorneys' fees. We affirm the decision of the district court in all respects, except we vacate the grant of attorneys' fees to USL and remand that issue to the district court.
 
 Analysis
 I. USL's demand for assurances
 
 3
 The California Commercial Code § 2609(1) provides that, should "reasonable grounds for insecurity arise" regarding the performance of one party to a contract, the other party may "demand adequate assurance of due performance." Until such assurance is received, the party making the demand "may if commercially reasonable suspend any performance." Id. The questions of whether grounds for insecurity are "reasonable," and whether or not an assurance of performance is "adequate," are determined under "commercial standards." Id. at (2). A party's failure to provide adequate assurances within a reasonable time (not to exceed thirty days) after receiving a justified demand is a repudiation of the contract. Id. at (4).
 
 
 4
 The parties debate whether the issue of reasonableness is appropriate for a summary judgment determination. The district court found that "[w]hile ... what constitutes adequate grounds for insecurity is often a factual question, conduct may be sufficiently extreme as to be capable of decision as a matter of law." We agree.[1]
 
 A. Expert testimony
 
 5
 Wien is correct in its argument that expert testimony may be sufficient to successfully oppose a motion for summary judgment, provided that the expert is competent and the basis for his or her expertise is stated in the affidavit. Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.1995). However, in order to defeat summary judgment, the inferences drawn from the expert's affidavit must fulfill the standard in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986) of being sufficient to sustain a favorable jury verdict. Id.
 
 
 6
 Given the facts in this case, the testimony of Doust, Wien's expert, is insufficient to create a question of fact for the jury on the reasonableness issue. The comments after Cal.Com.Code § 2609 state that "repeated delinquencies must be viewed as cumulative." Uniform Commercial Code Comment 4, foll. Cal.Com.Code § 2609.[2] USL has presented evidence to the effect that Wien received extensions on the closing date not contemplated in the original sale agreement at least three times (to April 1, 1991; May 1, 1991; and September 1, 1991), was late making deposits on at least 2 occasions, and had a deposit check returned by the bank due to insufficient funds. Taken cumulatively, these events are enough to create concern on the part of USL about the closing of the sale. For Wien to prevail on the reasonableness issue, its evidence (Doust's testimony) would have to be enough to convince a reasonable jury that USL did not have reasonable grounds for insecurity. In the face of the undisputed facts of this case, we hold that Doust's testimony is not sufficient to sustain a favorable jury verdict, and that therefore Wien has not established that there is a triable issue of fact as to the reasonableness of USL's insecurity.
 
 
 7
 B. New circumstances arising to justify demand for assurances
 
 
 8
 Even if Wien is correct in its assertion that a new contract was formed on August 7, the Uniform Commercial Code Comment 3 following Cal.Com.Code § 2609 specifically provides that the grounds for insecurity "need not arise from or be directly related to the contract in question."[3] Additionally, the Comment states that "repeated delinquencies must be viewed as cumulative." Id. at Comment 4. Therefore, even if what Wien claims were true (i.e., that the August 7 modification constituted an entirely new contract), it does not follow that the grounds for USL's insecurity can only be based upon events that occurred after August 7 and that were connected with that new contract.
 
 
 9
 Moreover, even if Wien were correct in its claim that a new event must have occurred after August 7 sufficient to justify USL's insecurity, Wien's actions following the August 7 contract modification were sufficient to give rise to insecurity on the part of USL. After August 7, Wien did not notify USL of its intent to close by August 20, as USL had requested. After USL wrote to Wien and asked it to notify USL by August 23 as to the closing date, Wien failed to make such notification. Instead, Wien promised to respond to USL on August 26, because Wien would have needed financial information at that time. Wien did not reply to USL on August 26. These facts could have caused reasonable insecurity on the part of USL.
 
 C. USL's right to terminate the contract
 
 10
 Under Cal.Com.Code § 2609(4), if a party to a contract making a justified demand for assurances does not receive those assurances "within a reasonable time not exceeding 30 days," the contract is repudiated. Upon repudiation of the contract, the nonrepudiating party is entitled to cancel the contract. Cal.Com.Code § 2610, 2703. Because Wien did not provide USL with assurances of any sort, and because Wien was given more than ample time to provide USL with a closing date for the sale, USL was justified in treating the contract as repudiated. It follows that USL was also justified in terminating the contract.
 
 II. Tax opinion of Hawaiian counsel
 
 11
 Section 3.15 of the contract provides that:
 
 
 12
 Buyer's obligations hereunder to purchase the Aircraft and assume the Seller's interest in the Lease Documents shall be subject to fulfillment of the following conditions precedent to the reasonable satisfaction of Buyer:
 
 
 13
 3.15 Opinion of Hawaiian Counsel. An opinion of counsel mutually acceptable to both Buyer and Seller that the agreed upon location of the Aircraft at the time of the Closing on the Closing Date will permit the transaction completed by this Agreement not to be subject to taxation by the State of Hawaii.
 
 
 14
 According to Section 1.4(k) of the contract, this opinion of counsel did not have to be provided until the closing of the sale:
 
 
 15
 Seller's and USAI's Actions. Subject to the terms and conditions hereof, at the Closing Seller and USAI shall take the following actions:
 
 
 16
 (k) execute and deliver all other instruments, certificates and other documents, and take all other actions, as are required, in the reasonable opinion of Buyer, to be executed and delivered or taken by Seller and USAI on or before the date of the Closing in order to consummate the transactions contemplated hereby.
 
 
 17
 (emphasis added). The Hawaiian tax opinion is a document required to close; as such under Section 1.4(k) it is due at the closing. Because the sale never closed, USL was never obligated to deliver the opinion. USL's failure to deliver the opinion, then, did not discharge Wien's duty to perform under the contract. Mr. Doust's testimony to the effect that USL should have provided Wien with a copy of the letter as soon as USL received it is not enough to create a triable issue of fact on this point. Therefore, we affirm the district court's grant of summary judgment in favor of USL's declaratory relief claim on this issue.
 
 III. Liquidated damages
 
 18
 The burden is on Wien to show that the liquidated damages clauses are invalid. California Civ.Code § 1671 provides that liquidated damages clauses are valid "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." The Law Revision Commission Comment following Section 1671 lists the following factors to be taken into consideration when determining if a liquidated damages provision is unreasonably high or low: the relationship of the damages specified in the contract to the harm that could reasonably be anticipated in the case of a breach; the equality of the bargaining power between the parties; whether the parties were represented by counsel at the time of contracting; whether the parties anticipated that a determination of the actual damages under the contract would be difficult or expensive; the difficulty of establishing foreseeability and causation; and whether the contract that includes the provision is a form contract.
 
 
 19
 A. Differing damages as an indication of a penalty
 
 
 20
 Wien has not established that the contractual differentiation between the types of damages is unreasonable. In fact, the differentiation would tend to indicate the reasonableness of the section, by making the amount of damages contingent on the nature of the breach. See, e.g., Smith v. Royal Mfg. Co., 8 Cal.Rptr. 417 (Cal.Dist.Ct.App.1960) (holding that a liquidated damages clause that provided for the payment of the same amount of damages, regardless of whether the buyer defaulted after the purchase of one or one hundred of seller's products, was a penalty).
 
 
 21
 Wien relies once again on the testimony of Mr. Doust as support for its premise that there is at least a triable issue of fact as to the reasonableness of the sections. Wien's evidence on this point is not the "significant probative evidence" required by Anderson. 477 U.S. at 249. Doust's testimony is not enough to raise a triable issue of fact regarding the liquidated damages clause.
 
 B. Wien's lack of independent counsel
 
 22
 It is true that two of the factors to be considered when determining the reasonableness of the clauses are whether the parties were represented by counsel, and the relative equality of bargaining power of the parties. Law Revision Committee Comment foll. Cal.Civ.Code § 1671. However, Wien does not seem inexperienced in matters of aircraft purchasing. In December of 1990, Wien entered into another contract to purchase an aircraft for millions of dollars. This other contract also contained a liquidated damages clause. It is difficult to accept Wien's apparent claims of unsophistication and unequal bargaining power in this transaction when it appears that Wien has entered into this type of contract in the past.[4]
 
 
 23
 While the presence of independent counsel is certainly helpful and definitely advisable when entering into a contract of this magnitude, the lack thereof does not render provisions of the contract unreasonable. Wien has not introduced specific facts to show that any of the other Law Revision Commission factors would demonstrate the unreasonableness of the clauses. In fact, the plain language of the contract tends to indicate that the clauses were not unreasonable. The contract expressly states that the liquidated damages clauses have been deemed fair and equitable by counsel for the respective parties. The contract also expressly states that section 25.3 has been deemed the best approximation of the damages that USL might incur, and that what the exact amount of damages would be could not be accurately determined.
 
 
 24
 For the aforementioned reasons, we hold that Wien has not met its burden of presenting "significant probative evidence" that the liquidated damages provisions are unreasonable.
 
 IV. Wien's conspiracy counterclaim
 
 25
 Under California law, to prove a civil conspiracy, Wien must show substantial evidence of three factors: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." Kidron v. Movie Acquisition Corp., 47 Cal.Rptr.2d 752, 757 (Cal.Ct.App.1995).
 
 
 26
 There is no indication that USL was deliberately trying to conspire against Wien by concealing the commission agreement. Though unaware of the exact terms of the commission agreement, Wien knew of the existence of the commission agreement before Wien signed the sale agreement. Moreover, Wien approached USL and asked if they would be willing to consider altering the purchase price of the aircraft if Wien were able to get USL released from the commission agreement. Wien knew at that time that USL was going to pay Turner a $250,000 commission based on the purchase price. Following a meeting wherein an agreement regarding the payment of Turner's commission was reached, Wien's president considered the matter of the commission agreement "resolved", and wrote that Wien "did not blame US Airlease for the situation [Wien] was put in by Jetlease."
 
 
 27
 There is also no indication that USL would have charged Wien a lower price for the aircraft were it not for USL's commission agreement with Turner. In fact, Turner had presented Wien with a preliminary figure of $6.15 million for the aircraft before Turner signed the commission agreement with Wien.
 
 
 28
 The district court concluded that "Wien cannot have been the unwitting victim of a conspiracy" because "Wien knew about the commission agreement between USL and Turner prior to entering into the Agreement with USL." Because Wien has not presented evidence that USL intentionally entered into a conspiracy for the purpose of injuring Wien that is sufficient to sustain a jury verdict, we affirm the decision of the district court on this issue. See Kidron, 47 Cal.Rptr.2d at 758.
 
 V. Attorneys' fees
 
 29
 In the instant case, the sale agreement contains an attorneys' fees provision. The relevant contract section reads as follows:
 
 
 30
 9.1 Buyer hereby indemnifies and holds Seller and USAI and each of them ... harmless from and against any and all loss, cost, damage, injury or expense (including, without limitation, court costs and attorneys' fees) whatsoever and however arising (whether directly or indirectly) which Seller or USAI ... may incur by reason of any liabilities, claims or causes of action which accrue or arise under any of the Lease Documents or with respect to the Aircraft after the Closing Date....
 
 
 31
 This contract provision is ambiguous. While very broad, this provision limits recovery to expenses incurred due to causes of action "which accrue or arise under any of the Lease Documents or with respect to the Aircraft after the Closing Date " (emphasis added). This sale was never closed, due to Wien's continuous delays and repeated defaults. It is unclear whether this clause conditions indemnification upon the closing of the sale, by stating that indemnification can only take place after the date on which the sale closes.[5]
 
 
 32
 It appears from the record that the meaning of the indemnity provision was never argued before district court. We therefore reverse the district court's grant of attorneys' fees to USL, and remand the issue to the district court for a determination of the meaning of the contract provision.
 
 Conclusion
 
 33
 We AFFIRM the decision of the district court in all respects, except we VACATE the grant of attorneys' fees to USL and REMAND the issue to the district court for determination.
 
 
 34
 Costs on this appeal are awarded to USL.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Interestingly, one of the cases cited by Wien in support of its claim that reasonableness in this instance must be a question of fact actually supports USL's assertion that such claims may, on occasion, be decided as a matter of law. The court in BAII Banking Corp. recognized that "[t]here are circumstances, however, where this issue may be resolved as a matter of law." BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 702 (2d Cir.1993)
 
 
 [2]
 While the comments refer to the Uniform Commercial Code, California has adopted the UCC provisions verbatim, so the comments remain relevant
 
 
 [3]
 The Comment even refers to a situation similar to scenario Wien presents: "[A] buyer who falls behind in 'his account' with the seller, even though the items involved have to do with separate and legally distinct contracts, impairs the seller's expectation of due performance." Id
 
 
 [4]
 A letter from USL noted that additional activity buying and selling aircraft on the part of Wein had been mentioned in two recent industry publications
 
 
 [5]
 The contract itself defines the Closing Date as "the Initial Closing Date, Initial Cutoff Date, Second Closing Date, Second Cutoff Date, Third Closing Date, Third Cutoff Date, Final Closing Date, Final Cutoff Date, or any earlier date as agreed upon in writing by the parties as the case may be." Section 1.3 of the sale agreement provides that "[t]he closing (the "Closing") shall take place on the Closing Date at a time and place, mutually agreed upon by the parties...."