### McCORD v. THOMPSON-STARRETT CO. et al.

(Supreme Court, Trial Term, New York County. February 18, 1908.)

1. ASSOCIATIONS (§ 13\*)—RULES—REASONABLENESS.

Plaintiff Building Trades Employers' Association was organized for the regulation of industrial disputes between its members and their employés, and adopted a constitution providing for a board of governors, with authority to decide disputes and regulate the conduct of its members. At the organization of the association disputes were pending between its members and various unions, and an agreement was made with a number of unions to settle controversies by arbitration; but the carpenters' union repudiated the agreement, whereupon the board of governors adopted a resolution prohibiting recognition of that union by the association, and defendant member of the association discharged its employés belonging to the union, but thereafter re-employed members of the union, though able to secure carpenters from other sources at the time. *Held*, that the order prohibiting the employment of the carpenters was not unreasonable, as tending to disrupt defendant's business or restrict competition.

[Ed. Note.—For other cases, see Associations, Dec. Dig. § 13.\*]

2. CORPORATIONS (§ 378\*)—CORPORATE POWERS—CONTRACTS—ASSOCIATIONS.

An agreement by a corporation to enter an employers' association organized to facilitate the business in which the corporation and other members of the association were engaged, and to prevent labor disputes between its members and their employés, was not beyond its corporate powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1535–1537; Dec. Dig. § 378.\*]

3. ASSOCIATIONS (§ 13\*)—RESOLUTION OF DIRECTORS—VALIDITY—PUBLIC POLICY.

A resolution of the board of governors of a building trades employers' association, forbidding members of the association to employ members of

a carpenters' union which had repudiated its agreement with the association to arbitrate labor disputes, was not void as contrary to public policy.

[Ed. Note.—For other cases, see Associations, Dec. Dig. § 13.*]

Action by William H. McCord, as president of the Building Trades Employers' Association, against the Thompson-Starrett Company and another. Judgment for plaintiffs.

Reversed 113 N. Y. Supp. 385.

Eidlitz & Hulse, for plaintiff.

O'Brien, Boardman, Platt & Littleton, for defendants.

GREENBAUM, J. The plaintiff, the Building Trades Employers' Association, seeks to recover the amount of four certain bonds which were executed by the Thompson-Starrett Company, one of its members, as principal, and the Fidelity & Deposit Company of Maryland, as surety, to insure the faithful observance of the "decisions, orders, prohibitions, and regulations of the board of governors" of the said association. It appears that in 1900 the labor conditions affecting the building industry in and about the city of New York were such that a number of the then existing organizations engaged in the building trade formed themselves into the Building Trades Employers' Association, and adopted a constitution which provided, among other things, for a board of governors, in whom was vested the authority to decide disputes and to regulate the conduct of the various members in matters pertaining to their common interests. At the time of the organization of the plaintiff association the serious differences between the labor unions and the employers who formed the association resulted in the suspension of work on the part of the employers. Work was only resumed after agreements had been made with such labor unions as were willing to enter into them, wherein it was provided that controversies during a certain fixed period of time were to be settled by arbitration, and that strikes on the part of employés or lockouts on the part of employers were not to be declared until all efforts at arbitration should have been found to be abortive. In August, 1904, the Brotherhood of Carpenters, together with certain other unions, in violation of their arbitration agreement, engaged in a strike upon the work of certain members of the plaintiff association. Thereupon the board of governors of the Building Trades Employers' Association adopted resolutions reciting the actions of the several labor unions that had violated their agreements and had persisted in their course, notwithstanding repeated requests to resume work, and declaring that:

"Unless the unions now on strike return to work on Friday, August 5, 1904, a general lockout of members of said unions is hereby declared and ordered; said lockout to include a radius of 25 miles from the City Hall."

The members of these labor unions having failed to return to work, further resolutions were thereafter adopted by the board of governors to the effect that, unless the unions on strike return to work on their jobs on or before the morning of August 22:

"The members of the association shall proceed with such mechanics as will agree to work under the conditions of employment as they existed on August 1st."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Subsequently, and on September 14th, the following resolution was adopted:

"Inasmuch as the Brotherhood of Carpenters did not return to work on August 22d as ordered, it is the sense of the board that they no longer be recognized by the Building Trades Employers' Association."

In obedience to the foregoing resolutions the Thompson-Starrett Company discharged all its employés belonging to the Brotherhood of Carpenters, and apparently engaged no employés of the said brotherhood up to January 15, 1905, on which day it notified the board of governors of its intention to employ members of the discredited union, and thereafter and in violation of the resolutions of the board of governors it employed members of this union. The defendant Thompson-Starrett Company was thereupon summoned to appear before duly authorized committees to explain and defend its action, and after a hearing, and upon the report of the committees that the said defendant had violated its agreement with the plaintiff association, the bonds given by the said defendant were declared forfeited and the defendant expelled from membership in the plaintiff association.

The defenses relied on are that the orders of the board of governors were not authorized by the constitution of the association; that the regulations of the board restricted competition between members of the association who could not obtain carpenters and nonmembers of the association who were not limited in the employment of carpenters, and also restricted the ability of the members to prosecute building operations; that it was beyond the corporate powers of the Thompson-Starrett Company to agree to any provisions of the constitution which would authorize the regulations of the board of governors; and, finally, if the constitution authorized the regulations, it was contrary to public policy and void.

As to the defense of lack of authority in the board of governors to make the regulations in question, it seems to me sufficient to say that the history of the conditions which led to the formation of the Employers' Association conclusively shows that one of its underlying purposes was, by the methods adopted, to meet just such a contingency as confronted some of its members when the resolutions were formulated by the board of governors. Under the circumstances the orders were not unreasonable, and I can find no warrant for the argument that they necessarily tended to the disruption of the business of the defendant.

The proofs show that shortly after the "lockout" was ordered an employment bureau was organized by the plaintiff association, and by December 1st, a time prior to the date when the defendant notified the plaintiff of its intention not to abide by its regulations, all the constituent members had been fully supplied with carpenters, either through the employment bureau or otherwise. It was satisfactorily established that the defendant refused to avail itself from the supply of employés of the employment bureau, and that if it had so availed itself it would have been enabled to engage all the carpenters it required in its business. It therefore follows that the effect of the regulations was not to restrict competition, as defendant argues.

The delay in prosecuting its works was a necessary incident to the

agreement into which the defendant voluntarily had entered with the plaintiff association, and it may be said that it was a condition that well might be expected to arise in order to prevent the more disastrous delays that might be produced by labor conditions in the absence of such an agreement.

The plea that it was beyond the corporate power of the Thompson-Starrett Company to vest in any outside body the right to bind it by the regulations adopted by the board of governors merits scant recognition. The agreement with the plaintiff association had reference to the business which, by its charter, the defendant was authorized to conduct. It was designed to facilitate it in its business operations, and to prevent a repetition of the ruinous and hazardous situations with which it had been confronted just prior to the time that it became a member of the association. The act of becoming a member being in itself a lawful one and directly related to its corporate purposes, it seems clear that it did not transcend its powers when it subscribed to the constitution of the association.

As to the final point made by the defendant, that the resolutions of the board of governors were contrary to public policy and void, it seems to me to be unnecessary to do other than to refer to the opinion of Mr. Justice Clarke in the case of City Trust & Safe Deposit Co. v. Waldhauer, 47 Misc. Rep. 7, 95 N. Y. Supp. 222, in which the legality of bonds given to the plaintiff association and identical to those under consideration in this case is discussed and upheld.

There must be judgment for the plaintiffs.