[L. A. No. 2805. In Bank.—February 19, 1913.]

F. NAKAGAWA, Respondent, v. M. OKAMOTO, Appellant.

M. YAMAGUCHIE, Respondent, v. F. A. KASUYAMA, Appellant.

K. AKUTAGAWA, Respondent, v. U. ABE, Appellant.

K. AKUTAGAWA, Respondent, v. M. MATSUNO, Appellant..

CONTRACT—PENALTY—CONSTRUCTION.—In determining whether a provision in a contract is for liquidated damage or for a penalty, the fundamental rule is that the construction of such stipulations depends, in each case, upon the intent of the parties, as evidenced by the entire agreement construed in the light of the circumstances under which it was made.

Id.—Promissory Notes Held to have Been Intended by Way of Penalty or Forfeiture—Proof of Actual Damage Essential to Recovery.—Promissory notes held to have been intended by way of penalty. or forfeiture, in view of which, in the absence of proof of actual damage, no recovery can be had on the notes.

APPEALS from judgments of the Superior Court of Los Angeles County and from orders refusing a new trial. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Ingall W. Bull, for Appellants.

Isidore B. Dockweiler, and Walter R. Leeds, for Respondent.

ANGELLOTTI, J.—The four actions above specified were tried together, all involving the same questions. The defendant in each action appeals from a judgment given in favor of the plaintiff therein and from an order denying his motion for a new trial. The motions for a new trial in the four cases were heard upon a single statement, and the record on the four appeals is contained in one transcript.

The original complaints were in the usual form of a complaint on a promissory note, each alleging substantially that on or about July 22, 1909, the defendant executed and delivered to the "Japanese Farmers' Association" his promissory note in the following words, viz.:

"Los Angeles, Cal., July 22nd, 1909.

"One day after date I promise to pay to the order of Japanese Farmers' Association, five hundred dollars, for value received, with interest at ...... per cent per ........ from .......... until paid, both principal and interest payable only in United States gold coin, and in case suit is instituted to collect this note, or any portion thereof .......... promise to pay such additional sum as the court may adjudge reasonable as attorneys' fees, in said suit.

"$500.00";

that no part thereof has been paid; and that prior to the commencement of the action the Japanese Farmers' Association duly transferred and sold said note to plaintiff. The answer in each case, among other things, denied the alleged

transfer of the note to the plaintiff therein, and set up as a defense want of consideration. The trial was commenced upon these pleadings.

The evidence developed the fact that the circumstances attendant upon the execution of the notes were substantially as follows: In June, 1909, there were located in the city of Los Angeles two market houses, one known as the Third Street Market and the other as the Ninth Street Market. At that time there was a large number of Japanese farmers engaged in raising garden vegetables to be sold in the markets of said city, many of whom were members of what was called the Japanese Farmers' Association. This body was an unincorporated association, and, so far as the record shows, had no business or purpose defined by any agreement of any kind or character, or any articles of association whatever, was not engaged in business of any kind and had no property. The president testified that he could not explain "what it is." There is absolutely nothing in the record to indicate what were the duties or powers of any of the officers thereof. Prior to June, 1909, most of the Japanese farmers so associated were doing their individual business and selling their produce at the Third Street Market. In that month they agreed among themselves that they would move to the Ninth Street Market, and discontinue doing business at the Third Street Market, and they so did. Some of them purchased stock of the corporation conducting the Ninth Street Market. After this, while these Japanese were so established at the Ninth Street Market for the sale of their produce, some of them owning stock in the corporation conducting the same, a so-called agreement in writing was signed by some eighty of them, including, according to some of the evidence, three of the defendants. It was stipulated that defendant Matsuno never signed this paper and had no knowledge thereof. The so-called agreement, as shown by an alleged reproduction thereof from the memory of the person who prepared it, entered upon the minutes of the Japanese Farmers' Association, was as follows:

## "Agreement.

"We, the undersigned, since moved to the Ninth Street new market, we must pray for the success of the said market, and it became necessary to provide for the expansion of the said

market.   Therefore, each of us agrees to protect new market, and furthermore, in order to show their good faith, not to be persuaded by the Third Street old market under any inducement, each of us hereby agree to put up five hundred dollars in promissory notes, and at the same time it is agreed that in case of violation of the agreement, the note at once become due; and it is understood and agreed that there would be no objection for the members of the association to attach the property.

"In witness whereof, each of us do hereby sign our names."

The so-called agreement as entered in the minutes was preceded therein by the following preamble:

July 22nd.

"Since Japanese farmers, Chinese and white farmers moved to the Ninth Street new market the old market is in very lonesome condition.  They feel especially in the scarcity of vegetables.  They bought up Japanese farmers with money, or bought up farmers by inducing Chinese with money, and attempted to buy with several hundred dollars.  We, the Farmers' Association, tried to prevent it, and also in order to prevent it we provided that each member of the association to give a five hundred dollar note payable one day after date, and after each signed an agreement we took the note. The agreement and the note are as follows":

The notes in suit were signed by the defendants except Matsuno solely in pursuance of this so-called agreement, and there was no other consideration therefor.  So far as Matsuno's note is concerned there is no basis whatever for any claim that there was a sufficient consideration.  Subsequently, in the latter part of August, 1909, each of the defendants, being dissatisfied with the conditions existing at the Ninth Street Market, left the same, and re-established himself for the sale of his produce at the Third Street Market.  Thereupon T. Izumi, who testified that he was the treasurer of the Japanese Farmers' Association, indorsed these notes to the respective plaintiffs.  The indorsement in the first case, the others being similar in form, was as follows: "Pay to F. Nakagawa, Japanese Farmers' Ass'n.  By T. Izumi."  Izumi testified substantially that he was never formally directed or author· ized to make any such transfer.  He said that "the board of directors have nothing to do with the assignments in these

CLXIV. Cal.—46

cases," and that "there wasn't any meeting about it," and he did not intimate that he had any authority to transfer any property of the association.

At the close of the trial, the plaintiffs were allowed, over the protest of the defendants, to file amended complaints, setting up the so-called agreement, according to their construction of the same, and the notes, together with the circumstances under which it was claimed the agreement was entered into and the notes were given, and asking for judgment on the notes as specifying the amount of damage agreed upon by the parties for a violation of the agreement. It was stipulated that the allegations of the amended complaints should be deemed denied by the defendants, and that the defendants should have the benefit of the affirmative defenses set up in their original answers. The findings were in favor of the plaintiffs as to everything alleged by them, and against the affirmative defenses set up in the answers.

As might well be expected from a reading of the foregoing, many points are made against the judgment.

It is obvious from what we have said that the judgment in the action against Matsuno is erroneous. As to him, at least, the note given was absolutely without consideration. He was not a party to the so-called agreement, and neither received nor was promised anything of benefit in consideration for his note.

As was held by the district court of appeal of the second district in deciding these cases, there was not sufficient evidence to show an assignment to the respective plaintiffs by the "Japanese Farmers' Association" or the members thereof of any of the notes or obligations. Therefore the finding on the issue of assignment in each case should have been in favor of the defendant instead of the plaintiff, the burden of proof being on the plaintiff to show his alleged assignment. The mere fact that the individual member who made the indorsement on each of the notes was the treasurer of the association is not sufficient to sustain a conclusion that there was an assignment, or to shift the burden of proof, as suggested. He did not even sign expressly as treasurer; confessedly he had not been expressly authorized by the association or the governing body thereof to make these particular assignments, there was no showing that under the articles of association

or any by-law or resolution the treasurer had any authority to sell or dispose of the assets of the association, or to assign any of its obligations; or even that the articles of association provided for a treasurer; or even, indeed, that there were any articles of association. Nor do we understand, as suggested by learned counsel for plaintiffs, that such assignments are acts within the usual powers of a treasurer.

There was no proof of actual damage to the Japanese Farmers' Association, or any of the members thereof, resulting from the withdrawal of defendants from the Ninth Street Market and their return to the Third Street Market. Judgment for any of the plaintiffs can be sustained only on the theory that the case is one where the parties have agreed upon the amount of five hundred dollars as the amount of damage that will be sustained by a breach of the so-called agreement, in view of the fact that, from the nature of the case it would be impracticable or extremely difficult to fix the actual damage (Civ. Code, sec. 1671), in other words, that the provision is one for liquidated or stipulated damage, which may be recovered upon a simple showing of breach of the agreement without any showing of damage. "But where it appears that the parties intended the sum named to be a forfeiture or penalty, it has been generally held that the party in whose favor the penalty or forfeiture exists must prove his damage." (*Muldoon* v. *Lynch,* 66 Cal. 540, [6 Pac. 417].) If in the nature of a penalty, rather than liquidated damages, it is not an actual debt, and cannot be recovered, but only the real damages which have to be proved. (1 Sutherland on Damages, sec. 283.) In determining whether a provision in a contract is for liquidated damage or for a penalty, "the fundamental rule, so often announced, is that the construction of these stipulations, depends, in each case, upon the intent of the parties, as evidenced by the entire agreement construed in the light of the circumstances under which it was made." (Id.) To our minds it is impossible to read the so-called agreement in the light of the circumstances that we have set forth without being convinced that the provisions as to the notes were intended purely by way of penalty or forfeiture, and without any reference to the question of damage. The sole design of these provisions was apparently to furnish a club to be used to prevent any person signing the agreement from returning

to the Third Street Market, by making him liable to a penalty or fine of five hundred dollars if he so did, absolutely irrespective of any question of damage. This object is plainly avowed in the preamble on the minutes of the Japanese Farmers' Association, which we have hereinbefore set forth. It is furthermore expressly avowed, in effect, in the agreement itself, and there is nothing in the circumstances shown by the evidence to detract in the slightest degree from the effect of the language used in the writing. In the absence of proof of actual damage there could, therefore, be no recovery either on the agreement or on the notes.

In view of our conclusion on the questions already discussed, it is unnecessary to notice any of the many other points made for reversal.

The judgment and order denying a new trial in each of the cases are reversed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.