This is an appeal from a judgment in favor of defendants after an order sustaining demurrers to plaintiffs' amended complaint without leave to amend. The contract sued upon was entered into by plaintiffs and defendants for the alleged mutual protection and advancement of the business interests and conditions of plaintiffs and defendants, some of whom were incorporated and others of whom were copartnerships or doing business as individuals. All of the parties to the contract were structural steel and iron manufacturers of San Francisco, and among the objects and purposes sought to be attained by the contract were the promotion of settlements of industrial disputes between the parties to the contract, as employers, and their employees, by conciliation and arbitration, and the effecting of a more thorough organization of employers with the view *Page 590 
to improving the conditions of the industry in which the several respective employers were engaged. To be more precise, the contract recites that the parties thereto were desirous of protecting themselves against various and sundry demands of their employees; that the parties were unable to resist, settle, or arbitrate said demands singly and severally without great loss to themselves and injury to their business; that, in the event of any parties withdrawing from the agreement and ceasing to act in concert with the remaining parties, great damage and loss would result which might not be recoverable under the law of damages and which damage would be impracticable of ascertainment or proof under the rules of evidence. After providing for certain uniform regulations and restrictions to govern the conduct of the parties to the contract and for an executive committee to represent them in specified dealings and negotiations, the contract requires that each party pay into a common fund a sum of money in cash, or promissory notes given in lieu thereof, the amount thereof to be determined by the gross annual business of the party making such payment. This fund was to be kept intact until the termination of the agreement, by lapse of time or otherwise, and then be distributed among the parties who had kept the covenants and conditions of the contract in the proportion which the amount of their respective payments into the fund bore to the whole of said fund, All of the parties elected to make the required payments by means of promissory notes. The complaint alleges failure on the part of defendants to observe and abide by the terms of the agreement, thereby causing great loss to plaintiffs and necessitating the termination of the agreement, and prays that all the parties to said contract be directed to pay into the common fund contemplated by the contract the respective sums represented by their several promissory notes and that such common fund be distributed among plaintiffs, or those determined by the court to be entitled to participate in the distribution under the terms of the contract.
The following grounds are urged in support of the demurrers:
1. That the sums represented by the promissory notes constituted penalties, and not liquidated damages, and that, *Page 591 
therefore, the complaint should have alleged the actual damage sustained by the breach.
2. That the contract was void in that, by the creation of the executive committee to act as the agent of the parties, it attempted to delegate discretionary corporate functions in so far as the contract related to the corporations who were parties thereto.
3. That the action is for the specific performance of a contract for the payment of money and, therefore, not maintainable.
[1] The mere recital in the contract that the notes are to be taken in discharge of the obligation of the contract will not, in and of itself, suffice to prevent, as appellant contends, an investigation into the preliminary matters touching the original transaction out of which the notes emanated. To eliminate an inquiry into the original transaction by a novation, there must be a clear intent to extinguish the old obligation and supplant it with a new one. (Civ. Code, sec.1531) The terms of the contract in controversy in accordance with which the notes in question were executed did not provide for the extinguishment of an existing obligation, but were expressly designed to cover the damage which might be occasioned by a breach of the contract in the future. Consequently, the covenant of the contract calling for the notes necessitates, proprio vigore, a consideration of the sufficiency of the notes as a basis for the recovery of liquidated damages.
Counsel for respondents contend that the provisions of the contract relating to the distribution of the common fund among those parties who had complied with the terms of the contract were intended to fix a penalty or forfeiture and that, therefore, plaintiffs cannot recover on the notes, but are limited to the recovery of the actual damages proved to have been sustained. (Muldoon v. Lynch, 66 Cal. 536, [6 P. 417];Wilmington Trans. Co. v. O'Neil, 98 Cal. 1, 5, [32 P. 705];Nakagawa v. Okamoto, 164 Cal. 718, [130 P. 707].)
The contract, after reciting the impracticability of ascertaining the amount of the damage and loss under the rules of evidence in the event of a breach, proceeds as follows: "Whereas, the parties hereto nevertheless desire to insure each other against such loss or damage and to induce each *Page 592 
other to execute this agreement, assure and make each other safe in the keeping thereof . . . , and to provide apenalty [italics are ours] for the violation of this agreement. . . ." [2] While the terms by which the parties designate the sum decided upon are to be considered in ascertaining the purpose and intent in stipulating the amount to be paid in case of a breach, such terms are by no means controlling and, even though the term "penalty" is used, it must be ascertained from a consideration of the nature of the agreement whether there was an actual intent to prescribe a penalty, that is, an intent to determine and define the liability in the case of a breach of the contract without any reference to the actual damage likely to be sustained. The agreement in question provides a complicated arrangement for the purpose of meeting various conditions incapable of being satisfactorily dealt with by individual action, and sets forth at length the peculiar facts surrounding the subject matter of the contract. The securing and maintaining of united action in certain contingencies by the parties thereto was the gist of the contract, and from the terms of the contract it is apparent that the parties thereto considered that any independent action in regard to the matters within the scope of the contract was likely to produce serious losses and defeat the aims and purposes contemplated by the parties. The sums to be paid for a noncompliance in this regard were not uniform amounts arbitrarily determined, but were to be based upon the gross business transacted by the respective parties, evidently upon the theory that the loss to those continuing to observe the terms of the contract depended in a considerable measure upon the volume of business of the party ceasing to act in unison with the remaining parties. The contract is thus clearly distinguishable from that class of contracts in which an arbitrary sum is to be paid for each day during which the violation of the contract continues. (PatentBrick Co. v. Moore, 75 Cal. 205, [16 P. 890]; Hansen
v. Vallejo Electric etc. Co., ante, p. 492, [188 P. 999].) Nor can it be said of the provisions under consideration, as was said in the case of Nakagawa v. Okamoto, supra, that "the sole design of these provisions was apparently to furnish a club to be used to prevent" a violation of the contract. It is true that in the case of McCord v. Thompson-Starrett Co., *Page 593 129 App. Div. 130, [113 N.Y. Supp. 385], the sums to be paid in the case of a breach of a contract similar to the one here presented were held to be penalties and not liquidated damages, but the reason for so holding was that the money was not to be apportioned among the parties to the contract, as here, but was the property of the association created by the contract, which, as such, could suffer no pecuniary loss from the violation of the agreement. Furthermore, provisions in contracts indistinguishable in purport and purpose from that here presented have been held to provide for liquidated damages and not penalties. (Associated Hat Manufacturers v. Baird-UnteidtCo., 88 Conn. 332, [91 A. 373]; Schrader v. Lillis, 10 Ont. Rep. 358.) [3] Looking to the entire agreement, its scope, purpose, and subject matter, and considering the result of a breach and the reasonableness of the sums agreed to be paid therefor, it is clear that there was an intent to estimate a just compensation for the loss sustainable in the event of a failure to comply with the agreement.
In this state a contract which attempts to fix the amount of damages in anticipation of a breach of an obligation is void to that extent (Civ. Code, sec. 1670), except "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." (Civ. Code, sec. 1671) Whether or not the damage would be impracticable or extremely difficult of precise appraisal is largely a question of fact. [4] A provision in a contract which fixes the amount of the damage in advance of a breach is void unless the party seeking to recover the sum agreed upon shows, by pleading and proof, that the provision is within the single exception to the general rule. (Long Beach City School Dist. v. Dodge, 135 Cal. 401, [67 P. 499]; Los Angeles etc. Assn. v. Pacific SuretyCo., 24 Cal.App. 95, [140 P. 295].) The complaint in the case at bar, after enumerating the circumstances wherein plaintiffs sustained loss occasioned by defendants' breach, alleges: "That at all times it was and is impracticable and extremely difficult to fix the amount of damage or loss to plaintiffs or to prove the same." This allegation, which, of course, is admitted by the demurrer, renders the complaint sufficient for the purpose of bringing the case within the exception provided by section 1671 of the Civil Code. *Page 594 
(Los Angeles etc. Assn. v. Pacific Surety Co., supra.) Whether plaintiffs will be able to sustain this allegation by proof is immaterial upon a consideration of the merits of the demurrers.
[5] The appointment of the executive committee to exclusively represent the parties in certain negotiations was not a delegation of the discretionary functions of the directors of each of the corporations so represented, and the execution of the contract was not, therefore, beyond the powers of the respective corporations who were parties thereto. The clause in the contract which creates the executive committee makes this committee, consisting of certain named persons, the agents of the parties to the contract for a period of three years, and gives said committee the full and exclusive power to represent the parties in negotiations involving the subject matter of the contract. The committee is to act, and the complaint alleges that it did act, "by and with the advice of the parties to the contract," and such advice was to be controlling and conclusive upon the committee when concurred in by three-fourths of the parties to the contract. The modern method of transacting corporate business requires that agents frequently, in cases where action by the board of directors would be impracticable or unfeasible, represent the corporation in dealings requiring the exercise of a great degree of discretion. (3 Fletcher on Corporations, sec. 1952.) In the present case it is not contended that the act which the agent was authorized to perform was beyond the powers of the corporations attempting to delegate the authority. The power delegated was merely the full authority to handle a branch of the corporations' affairs, i. e., the regulation of the conditions of employment. If it was deemed necessary, in order to successfully carry on the business of the corporations, to segregate, this subject matter and place it under the control of a duly authorized agent, there is no material difference between appointing an agent for such a purpose and for other purposes requiring the exercise of discretion. The fact that the committee appointed as agent was composed of representatives of a number of firms, corporations, and individuals does not render the contract unenforceable by reason of attempting a delegation of discretionary powers to a committee of persons not responsible to the stockholders or members. A *Page 595 
similar arrangement was held not beyond the power of the corporations participating therein in M'Cord v.Thompson-Starrett Co., 112 N.Y. Supp. 902. In discussing the question the court there said: "The plea that it was beyond the corporate power of the Thompson-Starrett Company to vest in any outside body the right to bind it by the regulations adopted by the board of governors merits scant recognition. The agreement with the plaintiff association had reference to the business which, by its charter, the defendant was authorized to conduct. It was designated to facilitate it in its business operations, and to prevent a repetition of the ruinous and hazardous situations with which it had been confronted just prior to the time that it became a member of the association. The act of becoming a member being in itself a lawful one and directly related to its corporate purposes, it seems clear that it did not transcend its powers when it subscribed to the constitution of the association." Upon appeal the appellate division of the supreme court of New York recognized as beyond question the power of the corporation to enter into such an agreement and thereby place the control of a part of its business in the hands of a common agent, but reversed the decision upon the ground that the order of the board of governors which had been violated was, in that particular instance, an order against public policy. (M'Cord v. Thompson-Starrett Co., 129 App. Div. 130, [113 N.Y. Supp. 385]; affirmed, 198 N.Y. 587, [92 N.E. 1090].)
[6] The complaint alleges the execution and delivery of the notes, demand for payment, failure and refusal to pay the same, and contains a prayer for judgment thereon; it therefore states a cause of action upon the notes. The complaint also sets forth the contract between the parties and asks the court, in the exercise of its equity jurisdiction, to distribute the money, after payment, among those to whom the court finds it should go under the contract. While the satisfaction of a legal demand is the basis of the action and there is, doubtless, a remedy at law by an action upon the notes, the steps necessary to a final and complete adjustment of the rights of the parties include the collection, by the officer designated by the contract, of various sums of money from a number of persons and the disbursement thereof after the respective rights of the several parties in *Page 596 
and to the common fund have been determined. The relief, if it is to be effective and complete, may thus involve and include an adjudication of the obligations and duties imposed upon this officer by the contract, as well as an accounting among the parties to the contract. The grounds for the jurisdiction of equity in this case are further strenghthened by the fact that a multiplicity of suits would be required if a purely legal remedy were sought, whereas the rights of the parties can be more readily determined in a single action. The reasons for upholding the jurisdiction of equity in this case are similar to those prevailing in the case of Warfield-Howell Co. v.Williamson, 233 Ill. 487, 497, [84 N.E. 706], where the court said: "There is a legal obligation at the foundation of the suit, but difficulties may arise out of the manner in which the obligation rests upon the persons or property of plaintiffs in error or in the efficiency of the process belonging to the law court which makes the legal remedy inadequate." An action seeking a judgment for the payment of sums of money into a common fund, together with a decree distributing the fund among the parties entitled thereto, is not an action for the specific performance of the payment of money, and an action of this nature has been upheld in this state. (California RaisinGrowers' Assn. v. Abbott, 160 Cal. 601, [117 P. 767].)
The judgment is reversed, with directions to the court below to overrule the demurrers, with permission to the defendants to answer, if they be so advised, within a designated time.
Lawlor, J., Kerrigan, J., pro tem., Olney, J., Shaw, J., Angellotti, C. J., and Wilbur, J., concurred. *Page 597