[L. A. No. 9630. In Bank.—December 30, 1929.]

JAMES LESLIE, Administrator, etc., Respondent, v. BROWN BROTHERS INCORPORATION (a Corporation), Appellant.

Oliver O. Clark and Chas. R. Nelson for Appellant.

C. L. Brown and V. N. Thompson for Respondent.

THE COURT.—The petition for hearing of this cause by this court after decision by the District Court of Appeal in and for the Third Appellate District was granted because of the earnest and able arguments presented by appellant with reference to the decisive question of whether the parties hereto had provided by contract for valid liquidated damages or for a penalty. After a very careful consideration of the record, we are satisfied with the opinion of the District Court of Appeal, written by Justice *pro tem.* McDaniel and hereby adopt said opinion as and for the opinion of this court, as follows:

"This is an appeal by the defendant from a judgment in favor of plaintiff.

"This suit was originally commenced by one Thomas O'Brien, now deceased. Upon his death, by order of court, the administrator of his estate, James Leslie, was substituted

as plaintiff. It was brought, by amended complaint, to recover damages for the alleged conversion of certain promissory notes, secured by mortgages on real property in Imperial county, for the total sum of $11,983.25, it being alleged that on December 8, 1917, the defendant came into possession of said securities and on December 31, 1921, wrongfully and unlawfully converted them to its own use.

"The answer of defendant denies wrongful or unlawful conversion and pleads an affirmative defense based upon certain contracts; also, sets up three further and separate defenses on the ground that plaintiff in three separate suits prosecuted by defendant against the said Thomas O'Brien, was barred from prosecuting this action by the provisions of section 439, Code of Civil Procedure. These matters hereinafter will be specifically noticed in greater detail. °

"The essential facts involved in this case may be outlined as follows:

"On February 1, 1914, James E. Brown and Thomas O'Brien entered into a contract of lease whereby Brown leased to O'Brien certain lands in Imperial county, fully described in the pleadings herein, consisting of 320 acres. The term of the lease was from January 1, 1914, to December 31, 1917. O'Brien agreed to build, construct and dig upon said lands canals or head ditches; to level, border, seed the same to some useful crop not less than 40 acres within 60 days from date of the lease; in default of doing the work within time in such manner as to comply with the rules and regulations of the Department of the Interior for making final proof of desert land entries, O'Brien was to pay all damages occasioned to Brown for loss of land or for delay or inconvenience in obtaining a patent from the government to said land. O'Brien agreed to fill in all arroyos, or natural ditches, to the level of contiguous surrounding land, except a certain large arroyo near the center. Certain percentages of said improvements were definitely indicated for each year of the term of the lease. In case it was found impracticable to fill the large arroyo mentioned near the center to the proper level, O'Brien agreed to terrace it and to border the terrace in the manner specifically stated. This lease was introduced in evidence as defendant's exhibit 'B.' O'Brien did not complete the im-

provements as the agreement required, and on December 4, 1917, the defendant Brown Brothers Incorporation, which had acquired the interests of James E. Brown, the original lessor of said land, made another lease contract with O'Brien. This second lease is defendant's exhibit 'A.' This lease recited the making of the first lease, which was about to expire, O'Brien's failure to complete the improvements, his desire to secure a lease for the year, beginning January 1, 1918, to and including December 31, 1918, his promise within said extended term to complete the improvements, expressing his willingness to furnish security for the making and completing said improvements within said last mentioned term.

"There was a provision also for a crop rental and one providing for the deposit with defendant of certain notes and mortgages particularly described in exhibit 'A' attached to the agreement. This last mentioned proviso contains the following, to-wit:

" 'And in the event said party shall (referring to O'Brien) fail to complete and pay for all of said improvements prior to the first day of August, 1918, then said first party is authorized to complete said improvements and to pay therefor and to collect upon said securities.'

"Time was made of the essence of this lease. There are other terms and provisions as to maintenance charges, nonremoval of improvements which need not here be further noticed. The notes and mortgages described in exhibit 'A' are the securities, the conversion of which is the basis of the present action.

"Defendant alleges in its answer that O'Brien's agreement as to the completion of the improvements on time was not completed under this lease on or about the 1st day of August, 1918, and, accordingly, on July 30, 1918, the parties made and executed in writing a third instrument of lease, which again recited all of the preliminary matters contained in the two former leases, the second of which was to expire a few months later, O'Brien's failure to complete the improvements in accordance with these two leases, his desire to obtain a further lease for the term of three years from October 1, 1918, to September 30, 1921, inclusive, and his wish to secure an extension for completing the improvements

on or before December 31, 1918, his willingness to furnish security that the improvements would be completed on time. It contains with respect to the improvements and the time for their completion, the following:

" 'Said party of the second part further agrees that he will, on or before the 31st day of December, 1918, complete all of the improvements on the said premises as specified in said lease contract of February 1st, 1914, to which reference is hereby made for further particulars, and as security for the faithful completion of said improvements within said time, and at his own expense, said party of the second part does hereby deposit with said first party certain mortgage notes and mortgages described in exhibit "A" attached hereto and made a part hereof, together with appropriate assignments thereof, to said first party, upon the understanding and agreement that it being exceedingly impracticable and difficult to estimate or ascertain the damages which would be sustained by said first party in the event said second party failed to complete said improvements as herein provided, that therefore, in the event said second party shall fail to complete said improvements as herein provided then said first party shall retain said mortgage notes and mortgages as liquidated damages for such breach and shall thereafter hold title thereto and be the owner thereof free from any claim or interest of said second party or any other person, it being expressly represented by said second party that he is the owner of the said notes and mortgages free and clear of any incumbrances whatsoever. . . . '

" 'Time is of the essence of this contract and in the event said party of the second part shall fail to perform any of the terms, covenants and conditions, and acts or agreements by him to be performed, as herein specified, at the time or in the manner specified then said party of the first part may, at his option, elect to declare all of the rights of the said second party of the second part herein, at an end and said party of the second part agrees that he will, upon receipt of notice of such election, surrender said premises to said party of the first part and pay all damages which said party of the first part may sustain, or may have sustained by reason of such default, including reasonable attorney's fees, and it is agreed that notice, in writing, of such election deposited in the United States mail addressed to said party

of the second part, at Brawley, Imperial county, California, shall, upon the expiration of fifteen (15) days thereafter, be conclusive notice of said election to said party of the second part.

" 'All of the terms, covenants and conditions herein contained shall run to, bind and inure to the benefit of the heirs, executors, administrators and assigns of the respective parties hereto.'

"On December 8, 1919, the last mentioned contract was modified by the extension of the term to September 30, 1922, inclusive, with the election reserved to the lessor to terminate it as of December 31, 1921; said election, if made, was to be evidenced by written notice; O'Brien was required to pay certain additional rentals, was released from certain obligations to plant and cultivate alfalfa and contained other provisions unnecessary to be set out.

"It may be observed that in this agreement of December 8, no mention is made of any prior failure on O'Brien's part to make required improvements on time under the terms of the preceding agreements, nor is any mention made of any damages sustained by defendant, nor of any appropriation, conversion or forfeiture of the said notes and mortgages theretofore assigned by O'Brien to defendant as security.

"Defendant, in its answer, pleads that it came into the possession of said notes and securities on or about December 4, 1917, in accordance with the contract of that date, which contained a provision for liquidated damages hereinbefore set out.

"The answer describes the land as rough desert land, traversed by deep gullies requiring large quantities of material to fill, alleges that the value, rentability and saleability of such land in Imperial Valley fluctuated greatly from time to time, and it therefore was extremely difficult to fix damages which defendant would sustain by reason of delay in the completion of said improvements. Defendant further alleges that on or about October 31, 1919, he gave said O'Brien the right to acquire the said notes and mortgages by completing the improvements on or about July 30, 1920, as claimed to be shown in a letter written to O'Brien by defendant's counsel on October 31, 1919; that O'Brien did not reply to the letter and did not, prior to August 1, 1920,

complete or substantially make any of said improvements and, thereafter and prior to November 1, 1920, the defendant notified O'Brien that the said right and option had expired, that the improvements had not been completed, and that defendant was and at all times subsequent to December 31, 1918, had been absolute owner of said securities, and that O'Brien had no interest therein or right thereto. The answer then sets out in three separate counts, as further and separate defenses, that on November 8, 1920, in the superior court of Imperial county and on January 14, 1921, in the same court, and on November 7, 1921, in the same court, it had commenced actions at law against O'Brien for the recovery of rent due under the lease contract of July 30, 1918, these actions being numbered 6444, 7137 and 7474. In addition to rent action number 7474 was also brought to recover payment for failure to improve the premises with a good stand of alfalfa, as provided in the said contract and extensions thereof. O'Brien in each case was duly served with summons but failed to defend by answer, and judgment was given against him therein, and in the action at bar it is claimed that by his failure to set up a counterclaim upon the cross-complaint for unlawful conversion sued for herein, he is barred from maintaining this action and is estopped from asserting any claim or right to any of the securities, or from recovering or asking to recover anything from the defendant.

"The findings of fact and conclusions of law of the trial court were in favor of the plaintiff on all the issues presented by the pleadings. It was found in addition to necessary preliminary matters, that on the 8th day of December, 1917, the notes and mortgages described in the pleadings and agreement were the property of Thomas O'Brien; that on that day they came into the possession of defendant, their actual mortgage value was found to be $7,500; that on December 31, 1921, O'Brien was the owner and entitled to the possession of said securities, but that on that date defendant, without right, converted them to its own use, and thereafter on March 22 disposed of them, converted them into cash and retained the proceeds to the total of $7,500 and interest at 7% from December 31, 1921; the court also found that defendant was in possession of the said securities in accordance with the lease contract of December 4, 1917,

which was thereafter on July 30, 1918, modified, not at O'Brien's request, but by the mutual consent of the parties and that the contract of July 30, 1918, not at the request of O'Brien, but by mutual consent, was further modified by written contract, dated December 8, 1918; that at all times mentioned in the action defendant was represented by attorneys and counsel but O'Brien was not represented; found that prior to August 1, 1918, O'Brien had made substantial improvements under said contracts and extensions and modifications but that all were not completed prior to August 1, 1918; that O'Brien, prior to January 1, 1918, had made substantial improvements but had not completed all of them, as required by contract.

"The court further found it is not true that at any time mentioned in the answer, because of the nature of the case, or otherwise, it was impracticable or extremely difficult to fix actual damages sustained by defendant by reason of O'Brien's failure to complete the improvements on time, as required in said contracts, but, on the contrary, found it to be true that at all times, any and all actual damages sustained, which would have been sustained by reason of said failure to complete the improvements, readily could have been ascertained and determined; found as to the kind and description of the land as of the time of the making of the original contract, and that soon thereafter O'Brien commenced and continued to make substantial improvements in levelling, grading, bordering, ditching and cropping the land, thereby reclaiming all of said land from its original nonimproved state into well improved productive agricultural land, so that agricultural crops could be and are successfully grown upon the whole area thereof; that O'Brien within the time specified in the extensions of the original contract graded the large gully and ravine so that the whole area thereof was made irrigable and suitable for farming and production of crops, and that land immediately adjacent to said gully was left well graded and suitable for farming and irrigation without depressed areas; found that the rental value of the land depended upon its improvement and that the rental and sale value fluctuated considerably from time to time, but that damages, because of the failure of O'Brien to complete said

improvements within the time limit provided in the said contracts could readily have been ascertained and determined; found that the letter of October 31, 1919, set out in paragraph VIII of the answer was not in final settlement and compromise of the controversy between O'Brien and the defendant concerning the making of the improvements and the ownership of the securities, and that defendant did not by said letter grant to O'Brien the right to acquire said securities from defendant, or any thereof, by completing the improvement in the contract of February 1, 1914, but that O'Brien did not answer said letter, nor accept, nor express acceptance or ratification of the terms thereof, nor assent to or comply with its terms.

"The court further found that prior to August 1, 1920, O'Brien had made substantial improvements but that the same were not completed; that prior to November 1, 1920, defendant notified O'Brien that the option to O'Brien had expired, and it claimed to be the absolute owner of the securities and that O'Brien had no further interest or claim therein or right thereto.

"The court found as to the other defenses based upon the three rental suits instituted against O'Brien by the defendant that the claim of plaintiff for damages, as set out herein, did not exist at the time of the commencement of said actions respectively; that the claim sued upon in this case did not arise out of the same transaction, which was the foundation of the several rental claims sued for by the defendant herein, plaintiff therein; that O'Brien's failure to set up his counterclaim for conversion as a counterclaim in each of said rental suits did not bar the maintenance of this action against defendant.

"The court concluded that Brown Brothers Incorporation on the 31st day of December, 1921, unlawfully and without right converted all of said promissory notes and mortgages to its own use and benefit and during the month of March, 1922, sold and disposed of all of the same and retained all of the proceeds from the sale thereof to its own use and that the value of said personal property during all the said time and at the conversion thereof was the sum of $7,500; concluded plaintiff to be entitled to judgment for that amount, together with interest at the rate of 7 per cent per annum

from December 31, 1921; concluded that the provisions of the written contract between Thomas O'Brien and defendant, with the written extensions and modifications thereof, inasmuch as it or they related to or provided for the forfeiture of the securities, were at the time of the making thereof, and are void and in violation of sections 1670 and 1671 of the Civil Code of the state of California; that the said letter of the attorneys for the defendant to O'Brien, dated October 31, 1919, does not and did not constitute or form any part of the estate or any contract between said parties.

"The remaining conclusions were in accordance with the findings of fact as to the said action, numbered 6444, 7137 and 7474, namely, that the plaintiff's counterclaim in this suit was not passed upon or founded upon any of the contracts, upon which the cause of action in either of said numbered suits is predicated; that defendant is not lawfully entitled to set up or claim as offset or counterclaim the judgment or amount of the judgment in either of said actions; that plaintiff in this case could not lawfully have set up the asserted claim in this action as against the claim of said Brown Brothers Incorporation in either of said actions.

"Appellant in a very elaborate and voluminous argument, specified twelve points, as to which he argues that the court erred. It will not be necessary to consider each of these twelve points *seriatim*, for all the essential issues may be reduced to four points:

"1. Was the provision for liquidated damages in the contract of July 30, 1918, and extensions thereof, void under the provisions of section 1670, Civil Code, or was it within the exception provided by section 1671, Civil Code?

"2. If the provision for liquidated damages was invalid, was the defendant authorized to retain possession of said securities under the terms of the prior lease, dated December 4, 1917, and at all times thereafter until the completion of the improvements by O'Brien?

"3. Did O'Brien ever substantially complete the said improvements as required?

"4. If the defendant at any time prior to the institution of its suits for rent under the contract of September 30, 1918, unlawfully converted the said securities, is O'Brien

barred from maintaining this action, because of his failure to counterclaim?

■ "It is apparent from an examination of the liquidated damage provision, that notwithstanding the recital that it was exceedingly impracticable and difficult to ascertain the damages at the time of entering into the contract, the essential character of that provision is that of a penalty. The securities were agreed to be given for the performance of certain labor of a kind not difficult to estimate. Anyone familiar with that class of work, especially practical engineers or contractors engaged in establishing and doing such work, readily could ascertain in advance the approximate cost, and, of course, that cost would be the measure of the approximate damage. There is nothing in the nature of the case or the work to be performed, notwithstanding the recital to the contrary, that would seem to make it impracticable or extremely difficult to fix the actual damage. At any rate, upon that issue, a question of fact was to be determined by the trial court upon the evidence. There was little, if any, evidence adduced upon the part of the defendant at the trial upon the question, but, on the part of the plaintiff, it was shown by the testimony of P. W. Knights, an engineer, that the cost of that kind of work could be determined. He stated that he had made estimates of leveling lands in their desert state, and in partially reclaimed states, for irrigation purposes and for raising agricultural crops of various kinds. His testimony was that it would not be difficult, though tedious, to do the work of reclamation upon this land, and that it would be entirely practicable to make such estimates and to ascertain the cost.

"The letter of October 31st of defendant's counsel, which defendant claims in its answer and in the argument, to be a modification of the contract of July 30, 1918, as well as notice to O'Brien on its claim that Brown Brothers Incorporation was the owner of the securities, by reason of his default in making said improvements, demonstrates that the securities were appropriated as a penalty and not as compensation for any damage actually sustained. This letter does not state that any actual damage had been sustained, but merely that the securities 'are now the property of Brown Brothers by reason of your default in making said improvements in the manner and within the time limited.'

·"Furthermore in this particular, the testimony of Mr. J. E. Brown, secretary of defendant corporation, is as follows:

" 'By Mr. Brown (attorney for plaintiff) : Q. Mr. Brown, you have already testified that these notes and mortgages were delivered to the defendant corporation on or about the 8th day of December, 1917. They were delivered to the defendant corporation by Thomas O'Brien, were they not? A. Yes sir. Q. Did the defendant corporation pay Thomas O'Brien anything for the notes and mortgages? A. No, not in cash. They were held as security. Q. They were not held as security on any other note? A. It was to secure the performance of a certain contract he had entered into with us for the improvement of 320 acres of land that we owned. Q. They were simply put up, as I understand it, as a penalty in the event he didn't complete the contract, is that right? Mr. Clark: Objected to as calling for the opinion or conclusion of the witness, and therefore, incompetent, irrelevant and immaterial. The Court: Overruled. A. Yes sir. Mr. Clark: Did you understand the question that he asked you it was put up as a penalty for not improving the land? A. I don't think I understand that question, then. By Mr. Brown: Read the question to him again. (Question read by reporter.) A. They were put up as security. Q. Put up as security that he would complete the contract? A. Yes sir, that is it, in the time mentioned in the contract. Q. I see. In other words, you were not going to pay him anything for those notes and mortgages, but would keep them if he didn't comply with the contract within the time mentioned. A. That is the idea. Mr. Clark: May the answer be stricken out until I can object to it? The Court: Make your objection. Mr. Clark: Was it under the contract? A. Yes sir. Q. By Mr. Clark: Was that contract in writing? A. Yes sir. Mr. Clark: Then we object to the question on the ground it is incompetent, irrelevant and immaterial and not the best evidence. The contract speaks for itself. The Court: Will you read the question to which that objection is made. (Question read by reporter.) In other words, you were not going to pay him anything for these notes and mortgages, but would keep them if he didn't comply with the contract

within the time mentioned. The Court: Objection overruled. Mr. Brown: That is all.'

"When the construction put upon the liquidated damage provision by the parties to the lease and the attorneys for the defendant corporation is examined, it is beyond doubt that that provision was a penalty exacted for the mere lapse of time in making the improvements and not for liquidated damages for any damage, actual or prospective, but if intended as indicated by the recital in the provision that it was, in effect, intended to be for liquidated damages, the testimony of the two civil engineers, Mr. Rice and Mr. Knights, witnesses at the trial, demonstrates that it was at the time of the making of the contract neither impracticable, nor extremely difficult to determine the cost of completing the improvements, which cost would be the only possible measure of damages to the defendant, if any, resulting.

"Many authorities are cited by appellant upon the law as to liquidated damages and the case of *Wright* v. *Rodgers*, 198 Cal. 137 [243 Pac. 866], is relied upon to establish the point that in the agreement under review, 'the parties have clearly manifested their intention that the sum fixed therein as damages should be liquidated damages, and in the absence of any ambiguity or uncertainty in its terms, this declared intention should control, in so far as the intention of the parties is concerned.' But that case was one for the breach of a contract for the exchange of real property and it holds that under section 3387, Civil Code, in such an action, a provision for liquidated damages is presumed to be valid, citing *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]. It clearly is distinguishable from this case.

"The law of California respecting liquidated damages under section 1670, Civil Code, and section 1671, Civil Code, is well settled. (*Sherman* v. *Gray*, 11 Cal. App. 348 to 353 [104 Pac. 1004]; *Dyer Bros.* v. *Central Iron Works*, 182 Cal. 588 [189 Pac. 445]; *Green* v. *Frahm*, 176 Cal. 259 [168 Pac. 114]; *Long Beach City School Dist.* v. *Dodge*, 135 Cal. 401 [67 Pac. 499]; *Patent Brick Co.* v. *Moore*, 75 Cal. 205 [16 Pac. 890].) In the case of *Nakagawa* v. *Okamoto*, 164 Cal. 718 [130 Pac. 707], the rule is stated as follows: 'In determining whether a provision in a contract is for liquidated damages or for a penalty, the fundamental rule is

that the construction of such stipulations depends, in each case, upon the intent of the parties, as evidenced by the entire agreement construed in the light of the circumstances under which it was made.'

"The case of *Sherman* v. *Gray, supra,* in many respects on its facts similar to the case at bar, says: 'It is clearly incumbent upon the party seeking to recover upon such agreement (liquidated damage clause) to show by averment and proof that his case is within the exception.' It holds that whether such a clause is valid or not is a question of fact, and further holds, 'from the testimony of these witnesses it appears that it was not impracticable but, on the contrary, a simple matter to ascertain plaintiff's actual damages.'

"We hold, therefore, that the findings of the trial court that the clause in the contract of July 30, 1918, was invalid is correct.

■ "The second and third questions may be considered together. James Leslie, the plaintiff, when called as a witness, testified quite fully, as to the improvement work done and accomplished by O'Brien over a long period extending to December 31, 1921. Without setting it forth in detail, it may be said it shows O'Brien had complied in a substantial manner with the requirements for improvements. The land was reclaimed, it was being successfully cultivated, irrigated and farmed for various crops, such as rice, barley and alfalfa; it was graded, levelled and in condition for farming operations.

■ " 'It is well settled that substantial performance of a contract by one party coupled with retention of the benefits thereof by the other will authorize an action by the former to recover the contract compensation; that in such case recovery may be had upon an averment of full performance though the proof falls short of showing it; and that the remedy of the latter is by counterclaim for his damages or by an independent action before he is sued.' (*Omaha Water Co.* v. *Omaha,* 156 Fed. 922 [85 C. C. A. 54].)

"The answer does not set up by averment any claim of actual damages. The defense seems to rest entirely upon the claimed validity of the liquidated damage provision. If defendant suffered any damage, he should have set it up.

In attempting to justify the liquidated damage provision, the defendant points out that as to the rental values and saleability, there were two elements of damage which could not be estimated at the time the contract was made. Such elements seem to us to be somewhat remote and speculative. (Sec. 3301, Civ. Code.) All of the evidence shows that in no respect did the defendant sustain even the slightest damage, even though it be admitted that O'Brien defaulted in the performance on time stated in the several contracts. He was permitted, however, to remain undisturbed in his possession. Rents were collected or judgments for rent obtained against him. There was no evidence that any written notice of an election to terminate his tenancy at the expiration of the year 1921 was ever given, except that there was evidence of a new lease to a Mr. Butters in 1922. It may be conceded that defendant may have had a right, under the contract of December 4, 1917, to retain possession of said securities until it had received notice of the substantial completion of the improvements. Up to that time, it might have taken advantage of the damage clause therein, but, as a matter of fact, it did not do so. We regard as immaterial, therefore, the findings of the court that defendant was not entitled to possession of the securities any time after July 30, 1918.

"The claim for unlawful conversion in this action was not, in any legal sense, a counterclaim to any of the three actions for rent, under sections 437, 438 and 422, Code Civil Procedure, and is not barred by the provisions of section 439, Code Civil Procedure. This view is upheld by a long line of decisions in this state. (*Bandy* v. *Westover,* 200 Cal. 222 [252 Pac. 593]; *Heilbron* v. *Kings River etc. Co.,* 76 Cal. 11 [17 Pac. 933]; *Earl* v. *Times-Mirror Co.,* 185 Cal. 165 [196 Pac. 57]; *Glide* v. *Kayser,* 142 Cal. 419, 421 [76 Pac. 50]; *Waugenheim* v. *Graham,* 39 Cal. 169; 34 Cyc. 706–710, on the subject of counterclaim; *Clark* v. *Kelley,* 163 Cal. 207 [124 Pac. 846].)

"It is unnecessary to notice other arguments of counsel as to whether or not O'Brien was caused to believe by several letters written by defendant's counsel that his time for completing the improvements had been extended.

"Under the authorities cited, we hold that the findings of the court as to the counterclaim are correct.

■ "There is an additional contention of counsel for appellant we deem worthy of notice, which is that by counsel's letter of October 31, 1919 (Defendant's Exhibit H), O'Brien confirmed his previous assignment of the deposited securities to appellant so as to pass the title thereto, and that the only interest he had left was an option to acquire said securities by the completion of the improvements on or before July 1, 1920; and inasmuch as the work was not completed within the option period, the option expired and appellant's ownership of the securities was forfeited absolutely.

"O'Brien did not reply to nor in any manner manifest acceptance of the terms stated in said letter. His silence, unaccompanied by any act, was not sufficient to indicate that the question of the possession and ownership of said securities was a closed incident in appellant's favor. We quote from 13 Corpus Juris, 276:

" 'An offer made to another, either orally or in writing, cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance.' (See, also, *Niles* v. *Hancock*, 140 Cal. 157–162 [73 Pac. 840]; Williston on Contracts, p. 168, sec. 91, and p. 172, sec. 91a, and secs. 1580 and 1581, Civ. Code.)

"We hold, therefore, that this letter did not modify any contract, nor in any manner, or at all, any agreement with O'Brien affecting the possession or ownership of the securities.

"To recapitulate, we determine that the findings of the court upon all material issues involved herein must be upheld, namely, that the liquidated damage clause was invalid under section 1670, Civil Code, and not within the exception of section 1671, Civil Code; that defendant unlawfully converted the said securities on the 31st day of December, 1921; that O'Brien on that date had substantially completed the improvements and was entitled to the return of his securities; that defendant failed to establish that it had suffered any damage by reason of O'Brien's failure to comply with the time provisions of the several contracts; that this action is not barred by reason of the alleged failure of

O'Brien to file counterclaims against Brown Brothers Incorporation in the rental suits specified.

"It appears from a general view of all the evidence in the case that the defendant received and retained the benefits of all improvements made by O'Brien in the years of his tenancy, and by its answer, without right seeks to retain the full value of the securities which were converted to its own use. The trial court's conclusions of law were correct."

The judgment is affirmed.

Rehearing denied.